(Superior Court of Cincinnati.)

General Term.

## THE A. H. PUGH PRINTING COMPANY v. JULIUS DEXTER.

(1.) A tenant who takes possession of premises under and by virtue of a contract for a lease, which lease was never executed, becomes liable for the rents stipulated by said contract to be contained in said lease, the same as if said lease had been executed, so long as he retains possession of said premises.

(2). So long as possession is retained under said contract, the rights of the landlord and tenant inter sese are governed by the terms and conditions of the proposed lease in the same manner as if the said lease had been executed.

(3). At the date of the execution of the contract for a lease in suit, the improvements on the premises proposed to be leased consisted of a one story brick building, the north wall of which was one half upon the lot of an adjacent proprietor; this wall was a party wall, made so by deed executed and delivered between the lessor and said adjacent proprietor, which deed was of record at the time said contract was executed. Acting under said contract, the lessee proceeded to erect a second and third story upon said improvements, using said party wall therefor, placing windows in said party wall overlooking the lot of said adjacent proprietor, which was then vacant.

Held, (1). That said lessee was bound by the terms of said party wall deed.

(2). Where the lease called for by said contract provided that the lessee should "have and hold the same with the appurtenances to the same", the lessee acquired an easement in said party wall as an appurtenance to the premises so leased, and took said premises, especially the second and third stories thereof erected by him, subject to a similar easement in favor of said adjoining proprietor; and this although the description of said premises in said lease made no mention of said party wall.

(3). Said adjacent owner subsequently erected a building upon his lot, using therefor said party wall in accordance with said party wall deed, and filled up the window spaces placed by said tenant in the second and third stories so erected by him. These acts did not amount to an eviction of said tenant by said landlord, or to a breach of the landlord's covenant for quiet possession contained in said lease.

(4). The party wall deed providing that the adjacent proprietor when he made use of the wall, should pay to the lessor his proportion of the cost of said party wall, the lessor was entitled to receive said sum upon said use being made; this notwithstanding said contract for a lease provided that the lessor was to pay the cost of said additional improvements erected by the lessee, and notwithstanding that the rent stipulated in said lease was in part based upon the additional cost of said improvement.

Quaere—Whether the lessor was bound to allow the lessee a reduction upon the stipulated rent proportional to the amount so received by him from said adjacent proprietor; but the said reduction having been voluntarily allowed in this case, the tenant cannot complain.

(5). The jury, before their verdict is recorded and they are discharged, may be instructed by the court to retire to their jury room to consider whether or not they made a clerical error in the amount of their verdict; and it is not error to so instruct them, if upon retiring, they find said clerical error to have been made, and return a correct verdict.

---

SMITH, J.

In the court below Julius Dexter brought an action against the A. H. Pugh Printing Company, to recover from the latter a certain amount of rent for premises owned by Dexter, and occupied by the Printing Company under a contract for lease which was never executed.

The facts of the case are numerous and complicated; but I will endeavor to state as briefly as possible the most important of them, taking the statement in a large measure from the briefs of counsel.

On February 1st, 1880, Julius Dexter executed a lease to the A. H. Pugh Printing Company for a period of ten years, of a certain lot on Baker alley, in this city. Baker alley runs north and south. The lot is on the west side of the alley and runs west in parallel lines. It appears that before the lease was executed by agreement between the parties a one story brick building was put upon the lot by Pugh, and under his directions, but at Dexter's expense. Pugh

drew the plans, superintended the construction, had surveys made, and in general located the building and its walls, and determined its character, Dexter only paying the bills. The survey disclosed the fact that on the north line, and extending eastwardly some eight feet from the northwest corner of the lot leased, there was already a party wall lying one-half on the Dexter lot and one-half on the Baker lot, next north. This party wall was occupied on the Baker side by the McCullough building on Walnut street, and is still standing. Pugh continued this wall by building a 17-inch wall on the dividing line between the Baker and Dexter lots out to the alley, one-half of said wall being placed on each lot. He used for his building all the new wall so built, and eight feet off the east end of the party wall already standing. He placed two windows in this wall at its western end and opposite what is called the area on the Baker lot, this area being immediately in the rear of the McCullough building. No other windows were put in this one story improvement.

By an instrument dated, executed and acknowledged, December 18, 1880, and recorded December 21, 1880, it was agreed and covenanted between Dexter and the Baker heirs as follows:

Whereas, when Dexter was building in the fall of 1879, it was agreed that the north wall of his said building should be placed with its center on the line between their lots, etc.; and that a subsequent agreement in writing should be executed, embodying said verbal agreement; and that Dexter should build in accordance with such agreement; now, therefore, it is hereby agreed.

1st:—That said wall so built as aforesaid, by the party of the first part (Dexter,) with its center in said line between said lots shall be a party wall.

2nd:—That the said parties of the second part, their heirs, executors, administrators and assigns, shall have the right to use said wall at any time upon paying to the said party of the first part, his heirs, executors, administrators and assigns, one-half of the then value of said wall, such valuation to be made by three builders, to be appointed, one by each party, and the third by the two thus appointed.

3rd:—That either party shall have the right to build on top of the present wall, to such height as he or they see fit, such additional wall to be used by the other party upon payment of one-half of the then value of so much of said wall as he or they shall use; such value to be fixed in the manner above provided for the present wall; the heirs, executors, administrators and assigns to have the same rights of building and using.

4th:—That the present wall as built, or as it may be raised, shall continue as a party wall for the common use of the owner of each of said lots, so long as it continues to be a good and safe wall for such build-

ings as may be suited to said lots. but if said wall shall be destroyed or rendered unsafe, either by age, fire, storm, or other cause, then said parties, or either of them, shall have the right to build to his or her own line, and shall not be compelled to rebuild or repair such party wall.'

It appears from the record, that while this agreement was reduced to writing in 1880, it was in fact made in 1879. It is also fair to infer from the record that even if Pugh did not know the exact terms of the agreement between Dexter and the Baker heirs, he knew that there had been some negotiations on this subject. Dexter so testifies and Pugh does not deny it. But whether this inference is correct or not, Pugh did continue the party wall of the McCullough building and was allowed by the Baker heirs to locate one-half of the wall on their lot; and this is also the fact when he built the second and third stories hereafter mentioned.

With this wall so built, with the party wall deed of record for nearly four years, with the building only one story high, having in the north wall two windows overlooking the Baker area-way, but otherwise solid to the alley, matters ran along amicably for nearly four years, i. e., until shortly after January 11, 1884, when the contract on which this suit is founded was executed. This contract is as follows:

Whereas, by lease dated February 1st, 1880, Julius Dexter demised to the A. H. Pugh Printing Company, certain premises on Bank alley, between Third and Fourth streets in Cincinnati, for the term of ten years, at an annual rental as modified of $1912.60, payable quarterly, and with a privilege of purchase for $30,000; and whereas, said lessee is desirous of having certain other improvements put on said premises, on the cost of which it is willing to pay a rental of 12 per centum in addition to the rent already payable as aforesaid; and also is desirous of extending the term of its holding; and to take a new lease when such improvement is finished; and, whereas, said Dexter is willing to pay the cost of such further improvement, and to give such further term. Now, therefore, it is hereby agreed by and between the parties, as follows:

1st. Said lessee shall proceed to put a second story on the present improvements; the bills for which Dexter will pay from time to time as presented.

2nd. When such improvement is completed a lease shall be executed by both said parties, whereby said premises shall be demised to said lessee; said lease shall bear date sixty days after such improvement is begun; and excepting as herein modified, shall contain all covenants in present lease; the annual rent shall be $1912.60, plus 12 per cent. on the cost of such new building, and shall be payable quarterly as in the present lease; the term shall be until January 31st, A.D. 1900; the lease shall have a privilege of purchase for $30,000, plus the

cost of the new building; and the present lease shall be surrendered and cancelled. Dexter to insure in sum of $5,000. Alley from street or passage under house to be kept open with liberty to Dexter to close it for six months while building on front lot. (Signed)     Julius Dexter.

The A. H. Pugh Printing Co.
A. H. Pugh, President.

Acting under this contract Pugh proceeded to have the additional improvements made. They consisted in raising the building two stories, the third being added in accordance with a letter of February 10, 1885; the additional height on the north was added by building on top of the old one story wall as originally built by Pugh. One-half of it was again placed on the Baker lot, and again on the old party wall of the McCullough building, which extended to the east a distance of eight feet. In this wall Pugh placed in each story seven windows, three of which opened on the Baker area-way, and four of which opened on that portion of the Baker lot (then vacant) lying between said area-way and Baker alley. There were eight windows in all on the area, i. e., two in first story, three in second, and three in third floor, and also eight windows on the rear of Baker's lot east of the area-way, i. e., four in second and four in third floor. These windows had casings, sashes and lights, and were of the ordinary size. These second and third stories, as the first had been, were erected and the construction superintended by Pugh, Dexter paying the bills for the same as presented. The last improvement was completed some time before June 2, 1885. This date is important in fixing the date when the new lease was to be executed, inasmuch as the contract provided that ''when such improvement is completed a lease shall be executed by both said parties whereby said premises shall be demised to said lessee; said lease to bear date, however, sixty days after such improvement is begun.''

The new lease was never executed, but the parties went on exactly as if it had been executed. Matters again went on amicably until about October, 1894, when McCullough & Co., who held under the Bakers by some deed or agreement not shown, proceeded to improve by building on the Baker lot and in so doing made use of the wall. They worked entirely from the Baker side. The eight windows on the area were only blocked up half way through. The eight windows on the second and third floor (four on each fronting on the vacant lot), were blocked up with bricks, flush with the side of the wall on the Dexter side.

Some time in the early part of 1895, Dexter received payment of $425.00 under his party wall agreement from the Baker heirs for their use of the wall, and offered to proportionately reduce Pugh's rent, beginning with the installment due February 1, 1895, but the offer was rejected by Pugh.

On September 28, 1895, Dexter brought an action in this court against the Pugh Printing Company, claiming over $2000 for rent due under the contract of lease, and when the case came to trial filed a supplemental petition including in it installments of rent that were claimed to have fallen due between the filing of the petition and the day of trial.

The answer may be said to make one defense, viz: that the closing up of the windows on the north side of the building by the Baker heirs under an agreement with Dexter, was an eviction of the Pugh Printing Company by Dexter, of so much of the property as was occupied by that part of the party wall on the Dexter lot that was used for window spaces, and that therefore the Printing Company was entitled to a reduction in rent corresponding to the material impairment of the enjoyment of the premises which had been suffered by such eviction.

The charge of the court was in effect, that under the facts disclosed by the evidence, and as previously stated herein, there was no eviction of the Pugh Printing Company, and therefore the Company was liable for the occupation of the premises at the amount fixed in the contract for lease, reduced by the interest on the $425.00. The jury returned a verdict for the plaintiff and the defendant prosecutes error to reverse this judgment.

It is admitted that the shutting off of the light and air by the filling in of the windows is not an eviction but the contention is, that a physical expulsion from a part of the demised premises had taken place by filling in with bricks one-half of the window spaces that lay on the Dexter side of the division line; and that this expulsion was an eviction.

The eight windows opposite the area-way were only filed in on the side of the party wall which was on the Baker lot, and not on the side of the party wall which is on the Dexter property. No eviction therefore can be claimed as to these spaces; and as the only windows in the north wall of the original one story building were the two opposite the area-way, no eviction can be claimed by reason of any acts done in regard to the original one story wall.

This leaves only the eight windows in the second and third stories (four in each) opposite the vacant lot, put up under the agreement of 1884, in regard to which an eviction if any has taken place.

Conceding for the sake of argument that Pugh did not have notice in 1879, or at the time of the building of the wall for the first story of the building, of the agreement between Dexter and the Baker heirs, it is to be remembered that no eviction is claimed with respect to anything done in that wall or under the original lease of 1880. The eviction is claimed with reference to the eight windows in the second and third stories which were not constructed under the original lease, but under the contract of 1884. At that time the agreement between the Baker heirs and Dexter had been on

file for nearly four years, and Pugh was chargeable in law with notice of the same and was also put upon inquiry as to Dexter's right in the party wall erected by Pugh himself, not upon Dexter's ground only but also (one-half) upon the Baker lot; and the rent sued for is not rent under the original lease of 1880, which would have expired in 1890, but for rent from 1894, and by reason of occupation under the contract of 1884, by which the old lease was abrogated and a new lease was to be executed in its place expiring in 1900.

The claim that there was an eviction proceeds upon the assumption that notwithstanding the fact that there was no lease executed and acknowledged as required by statute, but only a contract for a lease, yet, inasmuch as possession was given under this contract, and valuable improvements made by Pugh upon the faith of it, equity will consider the situation of the parties to be the same as if a lease had been executed. We think this assumption is correct and fully warranted by the authorities, including those of our own state. Taylor on Landlord and Tenant, sec. 49; Wilber v. Paine, 1 Ohio, 251; Moore v. Beas. Cy., 3 Ohio, 294; Wilson v. Trustees, 8 Ohio, 17; Biedgman v. Wells, 13 Ohio, 43; Grant v. Ramsey, 7 Ohio St., 157.

As the rights of the parties are to be determined by the terms of the lease which they were and are in equity bound to execute, it is contended that as this lease was, by the terms of the contract to "contain all covenants in present lease (that is, the lease of 1880), excepting as herein modified," such a lease would necessarily contain a covenant for quiet enjoyment, because that covenant was in the original lease of 1890; and that the provision in the contract "excepting as herein modified," referring to the difference in rent and extension of time, would not off-set the right to have a covenant for quiet enjoyment in the new lease. It is therefore urged that the blocking up the window spaces as described, was an eviction to the extent that the blocking up was on the Dexter lot, and therefore a violation of the covenant for quiet enjoyment.

We agree with counsel for plaintiff in error, that the tenancy or occupation of the Pugh Printing Company is to be treated as if under a lease containing a covenant for quiet enjoyment; but does it necessarily follow from this proposition that there has been an eviction?

An examination of the original lease, whose terms are to be incorporated into the new lease except as modified by the agreement of 1884, will disclose the fact that the conveyance of the property by Dexter to the Pugh Printing Company, provided that the latter company should "have and hold the same, with the appurtenances to the same."

In the case of Platt v. Eggleston, 20 Ohio St., 414, it was held that the right of one lot owner to build part of a party wall upon the lot of the adjoining owner, was an appur-

tenance to the former lot and an easement to the latter lot. Consequently, the right which Dexter acquirred by the agreement of 1880, between himself and the Baker heirs with respect to the right to build one-half of a party wall upon the property of the Baker heirs was an appurtenance to the property of Dexter, and so far as necessary to the enjoyment of the lease to the Pugh Printing Company, it passed to that Company, and acting under such appurtenance Pugh constructed one-half of the party wall on the Baker lot. But he could not accept the privileges accorded by that appurtenance and reject the burdens which it imposed. f accepted at all (and we express no opinion as to whether he had the right to refuse to accept under it), he certainly must accept it as an entirety, enjoying its benefits and bearing its burdens, one of which was the right of the owner of the Baker lot to use all of the wall as a party wall, and if there were inclosures in them to fill them up.

Nor do we think it necessary that Dexter should have given Pugh actual notice of the existence of this agreement between himself and the Baker heirs. The lease to Pugh conveyed with appurtenances, and the written agreement evidencing the appurtenances was on record; and furthermore, he having exercised his right under the appurtenances to go upon the Baker lot and build upon it, he was put upon inquiry as to the terms upon which it was to be exercised and chargeable in law with a knowledge of the same.

The terms of the lease are to be so construed as to give force and effect to all of them, and to construe the covenant for quiet enjoyment, so that Pugh would be permitted to get the benefits of the covenant as to appurtenances, and to throw the burden of the same upon Dexter would be a construction of the instrument which would not, we think, express the intention of the parties, or be consistent with the principles of equity or law.

We are therefore of the opinion that there was no eviction by the filling up of the enclosures used for windows.

It is further contended by plaintiff in error, however, that inasmuch as there was no lease, but only a contract for lease, that the action was not for rent, but for use and occupation, and therefore the ruling of the court below refusing to admit evidence to prove the value of the use and occupation was erroneous.

It is to be observed that this construction is in conflict with the contention just considered, which as was stated proceeded upon the assumption that in equity the rights of the parties would be determined as if a lease had been executed and acknowledged; and we expressed our assent to that assumption as one upon which the rights of the parties would be determined. But that assumption is no less in force when considering the question of the rent to be paid, than in considering the question

COPYRIGHT, 1898, BY CARL G. JAHN.

whether there has been a violation of the covenant for quiet enjoyment. Under the authorities we have previously cited, we are of the opinion that where there is a covenant for lease, possession given under the lease and valuable improvements erected on the property, so long at least as the lessee remains in possession, he must pay the rent stipulated in the contract of lease.

A further objection made by the defendant to the payment of the rents stipulated for in the contract of lease, is, that subsei quently to the erection of the second and third stories Dexter received $425.00 from the Baker heirs as compensation for their use of the party wall by virtue of the agreement between them, and that this amount was agreed upon without the assent or knowledge of Pugh and was a violation of his rights.

But was the amount which the Baker heirs would pay Dexter under the agreement of 1880, a circumstance which would affect Pugh. It could only affect Pugh in one of two contingencies. First, if he would be entitled to any of the money paid by the Baker heirs to Pugh, or second, if a payment made would reduce the basis upon which the rent was to be paid, and upon which he was to pay either 9 or 12 per cent.

It seems to us that it cannot be said that the effect of the lease for ten years from Dexter to Pugh, was to convey to Pugh the right to negotiate with the Baker heirs and to receive the money which they paid for the wall. He had never paid anything for the construction of the wall, why should he receive anything paid by the Baker heirs to Dexter by way of reimbursement? The lease contains no stipulation to that effect. The fair construction of the terms of the lease would seem to be that Dexter should be allowed to reimburse himself as much as possible by any payment that the Baker heirs would under arbitration make, as provided by the agreement of 1880, when they came to use the wall; and that as the money would belong to Dexter, it would be an unreasonable construction of the agreement to hold that Pugh, and not Dexter, was to select the builder who was to represent Dexter on the arbitration board.

The arbitration was therefore properly had.

We are relieved from the consideration of the question whether Dexter was to credit the amount thus received to the wall construction account, so to speak, and to reduce Pugh's rent proportionately, because this Dexter did, although the lease nowhere stipulates for a reduction of rent. We are not able to see that the rights of Pugh were in any way infringed by the appraisement of $425.00, or the receipt of the same by Dexter.

The last error urged for reversal of the judgment, is, that when the jury returned their verdict and before it was recorded or the jury discharged, it was discovered that there was a clerical error of $100.00 made by the jury in their calculation, and the attention of the court being called to this fact by counsel for Dexter, the court instructed the jury to retire and consider whether the amount returned was the amount they wished to return, or whether there had been a clerical error of $100.00. The jury retired and immediately returned with a verdict $100.00 larger than the first verdict. We see no error in this action On the contrary, we think the action of the court entirely proper.

The judgment will be affirmed.

Hunt, J., and Jackson, J., concur.

Cohen & Mack, and John Galvin, for Plaintiff.

Drausin Wulsin, and F. O. Squire, for Defendant.